|  |  |
|---|---|
| IN THE UNITED STATES DISTRICT COURT<br>DISTRICT OF UTAH, NORTHERN DIVISION ||
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>v.<br><br>BRUCE HALE MECHAM,<br><br>                        Defendant. | **ORDER and<br>MEMORANDUM DECISION**<br><br>Case No. 1:10-cr-72 CW<br><br>Judge Clark Waddoups |

Now before the court is Defendant Bruce Hale Mecham's motion to dismiss and/or suppress evidence. Mr. Mecham is charged with illegal possession of firearms and ammunition by a felon. He first argues that the evidence against him was obtained in violation of his *Miranda* rights. In the alternative, Mr. Mecham argues that the search warrant authorizing the search of the vehicle where the evidence was found was defective. For the reasons discussed below, Mr. Mecham's motion is GRANTED in part and DENIED in part. Specifically, the motion is granted suppressing the statements Mr. Mecham made to Deputy Chad McCrary while Mr. Mecham was in jail; those statements are inadmissible and may not be used at trial. On the other hand, the motion to suppress the firearms and ammunition the police found in Mr. Mecham's vehicle is denied. That evidence was found by using information acquired independently of the constitutional violation and pursuant to a valid warrant. The court also denies Mr. Mecham's motion to dismiss this case.

## FACTUAL BACKGROUND

On June 25, 2010, Mr. Mecham was booked into the Weber County Jail on drug charges. On June 27, 2010, around noon, Deputy Kasey Preece of the jail began listening to a phone

conversation between Mr. Mecham, still an inmate at the jail, and his mother, Peggy Mecham. Mr. Mecham does not challenge the right of the deputy to listen to the conversation nor that he had received adequate notice that such conversations may be monitored or recorded. As Deputy Preece listened in, he heard Mr. Mecham ask his mother to go to "Josh's house" to get his belongings. Mr. Mecham stated, "there's a white car in the neighbor's driveway. It's a Toyota. It's my car. Make sure you pop the hood and look underneath the hood. Real important, can't miss it, and do something with it."[1] Mr. Mecham also stated that "it's" in a "pink or purple bag." He further asked his mother to give "it" to "Jen" and for "Jen" to give to "Thomas."

Based on these statements, Deputy Preece suspected that Mr. Mecham was attempting to get his mother to dispose of drugs. At that point, Deputy Preece apparently interrupted his monitoring of the phone call to call Weber Dispatch and request that dispatch ask the Morgan County Sheriff's Office ("MCSO") to have a deputy contact him. Deputy Preece had been friends with Mr. Mecham since high school and knew that Mr. Mecham's mother lived in Morgan County. Dispatch relayed Deputy Preece's message to the MCSO, who contacted Deputy Josh Porter at approximately 1:00 p.m. Deputy Porter called Deputy Preece at about 1:05 p.m. At that time, Deputy Preece told Deputy Porter abut the conversation described above between Mr. Mecham and his mother and that Deputy Preece suspected drug activity.

A.   **The Investigation in the Jail**

After speaking to Deputy Porter, Deputy Preece resumed monitoring the call between Mr.

---

[1] These statements were played from an audio recording of Mr. Mecham's phone call in court during the evidentiary hearing in this matter. Mr. Mecham does not contest the accuracy of the transcription by the government from which the court is using the relevant quotations.

Mecham and his mother. After Mr. Mecham asked his mother to retrieve his belongings, she responded that she was "not going to deal drugs" for him. Mr. Mecham told her, "Mom, it's not drugs mom, it's something else. Nothing to do with drugs. It has something to do with things that kill people." Mr. Mecham does not challenge that this information was obtained legally.

After Mr. Mecham's call to his mother ended, Deputy Preece, with the assistance of Deputy McCrary, decided to ask Mr. Mecham the location of "Josh's house." They decided to trick Mr. Mecham into thinking that his mother had called back to ask the location of the house. Deputy McCreary approached Mr. Mecham in the hall in the jail. Before speaking to Mr. Mecham, Deputy McCrary did not inform Mr. Mecham of his *Miranda* rights. Deputy Mr.Crary casually asked Mr. Mecham where "Josh's house" was located. Mr. Mecham responded "who is asking? My mom or the strike force?" Deputy McCrary said that he (Deputy McCrary) had only been told to ask Mr. Mecham about the house. Mr. Mecham said "101B, that's all my mom needs to know." Mr. Mecham challenges this information has having been obtained unconstitutionally because of the failure to give him a *Miranda* warning.

Deputy McCrary relayed this information to Deputy Preece. Deputy Preece then placed a second call to Deputy Porter at about 2:00 p.m. During that second call, Deputy Preece relayed the information that Mr. Mecham had described the belongings as "things that kill people" and that he had said "Josh's house" was "101B." As described in more detail below, however, by 2:00 p.m., Deputy Porter had already learned the location of "Josh's house" from an independent investigation and already had other officers securing the vehicle which was parked in the neighbor's driveway.

B.   **The Police Investigation**

Following the telephone call between Deputy Preece and Deputy Porter at about 1:05 p.m., Deputy Porter began an investigation with the assistance of MCSO Deputy Derek Engstrom. Deputy Engstrom learned by running Mr. Mecham's name through the computer system that Mr. Mecham and a Josh Engstrom had been involved in a traffic accident on June 11, 2010. From that report Deputy Engstrom learned that the address listed for Josh Engstrom was 3860 South Midland Drive #B101, in Roy, Utah (the "B101 address").

With this information in hand, Deputy Porter requested Weber Dispatch to have a Roy City Police Officer assist in the investigation. At about 1:30 p.m., Roy City Officer Chad Atkinson called Deputy Porter. Deputy Porter provided Officer Atkinson with the information about Mr. Mecham's conversation with his mother and the B101 address he had learned from the computer system. Deputy Porter asked Officer Atkinson to go to the B101 address to see if there was a white Toyota there, and to secure it if it was there.

While Officer Atkinson followed up on this lead, Deputy Porter went to Peggy Mecham's home in Morgan. Peggy Mecham was at home and agreed to speak with Deputy Porter about the telephone conversation she just had with Mr. Mecham. She stated that Mr. Mecham asked her to get his belongings out of a white Toyota that she believed was a Camry. She stated that she did not know exactly what Mr. Mecham wanted her to retrieve, but that she did not plan on getting it for him. She stated that she believed the vehicle would be at Joshua Engstrom's home in the Karol's Mobile Estates at the B101 address. This information confirmed the address the officers had previously obtained from the accident report.

After speaking with Peggy Mecham, Deputy Porter received a phone call from Officer

Atkinson who said that he had found the vehicle and would secure it until the MCSO arrived. Because at this point the officers suspected that they may find drugs in the vehicle, Deputy Porter contacted Agent Ken Huckaby of the Weber Morgan Narcotics Strike Force and asked him for assistance. Deputy Porter also called the Weber County Sheriff's Office ("WCSO") to request that a K-9 unit be sent to the B101 address. By this point, Deputy Porter had not yet learned any information about the possibility that the object hidden in the vehicle may be a gun or that Mr. Mecham had subsequently disclosed the B101 address to Deputy McCrary.

Deputy Porter then left Morgan County to travel to the B101 address in Roy and to meet with the other officers. At about 2:00 p.m., while he was driving to Roy, Deputy Porter received the second call from Deputy Preece. It was during that conversation that Deputy Porter first learned about Mr. Mecham's "things that kill people" comment and about his "B101" statement.

When Deputy Porter arrived at the B101 address, the Roy officers were already there and were watching a white Toyota Camry parked in the driveway of trailer B99, which was directly next door to B101. When Agent Huckaby arrived, he took charge of the investigation. The officers looked at the Camry from the street, but did not approach it. The Camry had no visible license plate.

Trailer B99 appeared to be vacant. Agent Huckaby nonetheless confirmed with the trailer park manager that no one lived in trailer B99 and that the Camry did not belong at B99. Agent Huckaby also got the manager's permission for the police to go on the B99 lot to view the Camry more closely. From the outside of the Camry, officers observed the Vehicle Identification Number ("VIN"). Agent Huckaby asked Officer Atkinson to perform a VIN check to determine who owned the vehicle. The VIN check indicated that the Camry was registered to Mr. Mecham

as the owner.

Deputy Dewain Sorensen, with the K-9 unit of the WCSO, ran his drug detecting dog around the exterior of the Camry to check for the odor of drugs. The dog did not give a positive indication for drugs. At that point, based upon the information about the presence of "things that kill people," the officers shifted their focus to weapons. Agent Huckaby knew that as a convicted felon, Mr. Mecham was not allowed to possess firearms.

At that point, Agent Huckaby decided to request a search warrant for the Camry. Agent Huckaby left Officer Atkinson to stay with the Camry at B99 while he prepared a search warrant in his office. To prepare that warrant, Agent Huckaby used the E-Warrants system provided by the Utah State Bureau of Criminal Identification. His first step was to prepare an affidavit and warrant for submission, which he did at 4:54 p.m. In the affidavit, he described the vehicle that he sought a warrant to search as a "1989 White four door Toyota Camry,VIN#JT21EK0038913," failing to copy the first five entries of VIN number correctly. He wrote that the vehicle was located in "Roy" at "3860 South Midland Drive #B99" and that a VIN check indicated Mr. Mecham owned the vehicle. Agent Huckaby also explained that the vehicle "is being watched by Roy Police Officers." The officer also incorrectly copied the first five entries in the VIN number into the proposed warrant. At 5:00 p.m., a Utah district court judge reviewed and approved the Affidavit and Search Warrant as submitted. The sole description in warrant of the vehicle to be searched was "1989 White four door Toyota Camry, VIN #JT21EK0038913, [i]n the City of Roy, County of Weber, State of Utah."

The E-Warrants system does not require personal communication between the officer and the judge, and none took place in this case. Agent Huckaby received notification that the warrant

had been approved and printed copies from the electronic system.[2] Agent Huckaby then returned to the B101 address to search the Camry at B99. Agent Huckaby acknowledged that he did not compare the partially incorrect VIN number listed on the warrant with the actual VIN number of the vehicle. He further acknowledged that it is not his practice to double check a warrant before he begins a search. Had Agent Huckaby carefully compared the VIN number listed in the warrant with the actual VIN number, he should have realized that the VIN number on the warrant did not exactly match the Camry's VIN. Specifically, the actual VIN for the Camry is as follows:

JT2VV21E1K0038913.

The search warrant, however, listed the VIN number for the vehicle to be searched as follows:

JT21EK0038913.

The affidavit also listed two incorrect VIN numbers, as follows:

JT21EK0038913, at page 1 of the affidavit and

3JT2V21EK0038913 at page 2 of the affidavit.

The affidavit was not attached to the warrant and was not incorporated by reference into the warrant. As a result the additional information in the affidavit describing the vehicle to be searched was not available to supplement the description in the warrant. The government correctly argues, however, that the last eight numbers of the actual VIN number, K0038913, are consistently correct in the affidavit and the warrant.

---

[2] Mr. Mecham argues that time stamps on the print outs from the E-Warrant system suggested, among other things, that the police had searched the Camry before the warrant issued. After hearing from a witness who testified about the how the E-Warrant system generates time stamps, the court is satisfied that the time stamps cannot be relied upon to contradict otherwise credible testimony about the timing of events. In short, at the time relevant to this case, E-Warrant's time stamps were unrelated to actual events and instead reflected system-related events.

Agent Huckaby testified that he did not realize that there were errors on the VIN number and the affidavit until long after he had completed the search of the Camry. He further stated that he knew exactly which vehicle he requested and received a warrant to search because he had confirmed with the VIN search that the vehicle belonged to Mr. Mecham, knew where it was located, and had officers at the vehicle waiting for him to arrive with the warrant.

With the assistance of the Weber Metro Crime Scene Unit, the officers searched the Camry. They discovered a purple bag under the hood of the vehicle. The purple bag contained a Charter Arms handgun, a Beretta .22 caliber handgun, a box of .357 ammunition. Inside the Camry, officers located paperwork belonging to Mr. Mecham and some drug paraphernalia.

## ANALYSIS

### A. Violation of *Miranda*

The government concedes that Mr. Mecham's *Miranda* rights were violated when Deputy McCrary approached Mr. Mecham in the jail and asked Mr. Mecham where "Josh's house" was located. The government further concedes that Mr. Mecham's responses to Deputy McCrary questions are not admissible and may not be used at trial. Accordingly, to the extent that Mr. Mecham's motion seeks to suppress his statements to Deputy McCrary, it is GRANTED.

Mr. Mecham argues that this violation of his *Miranda* rights requires that the evidence obtained during the search of the Camry also be suppressed. The answer is no. The court so concludes because police had already located the Camry at issue based on their independent investigation before Deputy Porter learned about Mr. Mecham's statements to Deputy McCrary. The independent investigation was not based upon or aided by any of the tainted statements. The information came from a search of the computer system using only information learned from the

telephone conversation between Mr. Mecham and his mother, information that is not challenged by Mr. Mecham. Under these facts, the "independent source doctrine" described in cases such as *United States v. Griffin*, 48 F.3d 1147, 1150 (10th Cir. 1995) controls. Because violation in this case did not lead to the discovery of the challenged evidence, the evidence need not be suppressed.

**B.    Sufficiency of the Warrant**

Mr. Mecham further argues that even if the *Miranda* violation did not taint the later search, the warrant was constitutionally invalid requiring the evidence discovered in the Camry to be suppressed. Specifically, he contends that the incorrectly copied VIN number and lack of address in the warrant itself rendered the description of the vehicle to be searched in the warrant so indefinite that a reasonable officer would not have known which of the many Toyota Camrys in Roy to search. This argument also does not prevail.

Under Tenth Circuit law:

> The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.

*U.S. v. Lora-Solano*, 330 F.3d 1288, 1293 (10th Cir. 2003) (internal quotation marks and citation omitted).

As to the first concern, the adequacy of description in the warrant "depends heavily on the facts of each case." *Id.* at 1294 (internal quotation marks and citation omitted). Courts are to look at the "[p]ractical accuracy rather than technical precision" of the warrant's description *Id.* (internal quotation marks and citation omitted). A "clerical error" in a warrant thus is not

automatically fatal to the warrant. *Id.* at 1293. Mistakes will "not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that the police can ascertain and identify the place to be searched." *Id.* (citations omitted). Moreover, even in the face of an erroneous description in a warrant, it is appropriate for courts to "cure the problem with the officer's knowledge," but only in circumstances when the "officer's knowledge is not the *sole* source" of the correct information. *Id.* at 1294.

Two cases from the Tenth Circuit are instructive. In *Lora-Solano*, the defendant argued that a warrant was invalid because, among other things, it listed the wrong address for the house to be searched. *See id.* at 1292. The Tenth Circuit disagreed. In support, the Tenth Circuit reasoned that the circumstances surrounding the execution of the warrant, including the the fact that the officers had relied on an informant to point out the correct house, made it unlikely that the wrong premises would be searched. *See id.* at 1293. The *Lora-Solano* court further relied on the fact that the address listed on the warrant had the correct street but was off by one digit, and that the informant identified the mistake to conclude that the technically wrong address was nonetheless adequate. *See id.* at 1294.

Another on point Tenth Circuit case is *United States v. Brakeman*, 475 F.3d 1206 (10th Cir. 2007). In *Brakeman*, the search warrant listed an address that technically corresponded both to a trailer owned by the defendant's neighbor and to the trailer owned by the defendant. *See id.* at 1209. The defendant argued that the warrant was deficient because the neighbor's trailer bore the address on the warrant and because the sole source of the information that the defendant's trailer was also located at the address was the officer's knowledge. *See id.* at 1211. The Tenth Circuit rejected both arguments. First, the *Brakeman* court found that the description included in

the warrant was adequate and technically correct. *See id.* The court further noted that the executing officer's knowledge was relevant, and that it was not the sole source of the information about the address. *See id.* at 1211-12.

The description in the warrant in this case satisfies the requirements set out in *Lora-Solano* and *Brakeman*. The warrant describes the vehicle to be searched as a 1989 white four door Toyota Camry and states that the Camry is located in Roy, Utah. The warrant lists a partial VIN number for the Camry, which the government concedes is incomplete. Specifically, as described above, the partial VIN listed in the warrant contains 13 characters, while a correct, standard VIN contains 17 characters. The court finds that considering all the circumstances, even despite the error in listing the VIN number, the warrant adequately described the vehicle to be searched here.

There are a two reasons why the VIN number error does not render the warrant insufficient here. First, the government has asserted, and Mr. Mecham does not contest, that the last eight numbers of the partial VIN identified on the warrant is unique to the vehicle in question and that the omitted numbers would correspond to a 1989 Toyota Camry. No other Toyota Camry would have the same last eight numbers and, thus, there is not a reasonable likelihood that a reasonable officer executing the warrant would confuse this vehicle with another and search the wrong car. Moreover, the VIN number was not the only description of the vehicle contained in the warrant. The warrant also specified the make, model, year, color and number of doors for the vehicle. Accordingly, the warrant gave enough information to identify the exact vehicle that was searched here.

Second, Agent Huckaby knew precisely which Camry in Roy was to be searched, and his

knowledge was not the sole source of that information. Police knew about the Camry from the phone call between Mr. Mecham and his mother. Further, police knew about the location of the Camry both from Mr. Mecham's mother and their from investigation of Mr. Mecham's traffic accident. While the Camry was parked outside of B99 and not B101, the trailer at B99 was vacant, and there is no indication that there were any other older Toyota cars in the immediate area. Moreover, Mr. Mecham had told his mother that the Camry was parked in the neighbor's driveway. The Camry that was searched matched both the description and the location the Mr. Mecham gave to his mother. Under *Lora-Solano*, Agent Huckaby's knowledge is therefore a factor on which the court may rely to cure the error in the VIN on the warrant.

As to the second concern, there was no reasonable probability that another vehicle in Roy could have been searched pursuant to the warrant in this case. Before, during, and after Agent Huckaby's obtaining the warrant in this case, there were officers watching the Camry. Moreover, as already mentioned, no other Camry in Roy, or anywhere else for that matter, would have had the last eight digits of the VIN listed in the warrant. Those numbers were unique to Mr. Mecham's Camry. Further, there is no indication that there were any vehicles similar to the one at issue anywhere near "Josh's house."

Because the warrant gave an adequate description of the Camry, and because there was no reasonable possibility that the wrong vehicle would be searched, the warrant at issue was valid. Accordingly, Mr. Mecham's motion to suppress the evidence obtained pursuant to the search of the Camry is denied.[3]

---

[3] Because the court has found that the warrant was valid, the court does not need to reach the issue of whether the good faith exception would apply in this case.

### C. Motion to Dismiss

Mr. Mecham moves to dismiss based on his asserted constitutional violations. Mr. Mecham, however, does not identify the legal standard governing the circumstances under which such a motion may be granted. The court concludes that while Mr. Mecham's rights under *Miranda* were violated, it is an adequate remedy in this case to suppress the evidence obtained as a result of that violation. Additionally, Mr. Mecham was not successful in his argument that the warrant was constitutionally infirm. His motion to dismiss is therefore denied.

### CONCLUSION AND ORDER

For the reasons stated above, Mr. Mecham's motion is DENIED to the extent is seeks to dismiss this case, and DENIED in part and GRANTED in part to the extent it seeks to suppress evidence, as specified above.

DATED this 8th day of June, 2011.

BY THE COURT:

_____
Clark Waddoups
United States District Judge